UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE A. TARTER, | ) |
| | ) CASE NO. C11-1625-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Julie A. Tartar appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1965 and has a college education. (Administrative Record ("AR") at 114, 133, 509.) Her past work experience includes employment as a publications editor.

(AR 21, 131, 136.) On May 21, 2008, she applied for DIB, alleging disability beginning on February 1, 2007. (AR 114.) Plaintiff asserts she is disabled due to fibromyalgia and depression. (AR 130; Dkt. No. 11 at 7-9.)

The Commissioner denied plaintiff's claim initially and on reconsideration. (AR 42-44, 46-47.) Plaintiff requested a hearing, which took place on March 4, 2010. (AR 503-50.) A supplemental hearing was held on September 8, 2010. (AR 28-37.) On November 3, 2010, the ALJ issued a decision finding plaintiff not disabled. (AR 12-23.) Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR 1-3) making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On September 29, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 1.)

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant has engaged in substantial gainful activity. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 14.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found plaintiff had the following severe impairments: obesity and fibromyalgia. *Id*. Step three asks whether the claimant's impairments meet or equal the

criteria of a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal a listed impairment. (AR 16.) If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the physical capacity to perform sedentary work. (AR 16.) With regard to her mental capacity, the ALJ found plaintiff had the ability to understand, remember, and carry out simple and detailed instructions; make judgments on simple and detailed work-related decisions; perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence; respond appropriately to supervision, co-workers, and work situations; and deal with occasional work setting changes. *Id.* With that assessment, the ALJ found plaintiff was unable to perform her past work. (AR 21.)

If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. The ALJ determined there were jobs that existed in significant numbers in the national economy that plaintiff could perform, such as telephone solicitor, diet clerk, and call out operator. (AR 22.) Accordingly, the ALJ concluded plaintiff was not disabled. (AR 23.)

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in denying her motion to subpoena a post-hearing examining physician; (2) in finding she

did not have a severe mental impairment; (3) in evaluating the medical evidence; (4) in discounting her credibility; (5) in evaluating the lay witness evidence; and (6) in finding her capable of performing other jobs existing in significant numbers in the national economy. (Dkt. No. 11.) The Commissioner argues that the ALJ's decision is supported by substantial evidence, is free of legal error, and should be affirmed. (Dkt. No. 15.)

A. Due Process

At the close of the first administrative hearing, the ALJ ordered two consultative examinations. (AR 547.) Upon receipt of the examination reports, they were tendered to plaintiff's counsel. In response, plaintiff filed a motion requesting that examining physician Daniel Colonno, M.D., be subpoenaed to testify concerning his evaluation. (AR 84-87.) The ALJ denied the motion on the grounds that the subpoena request did not comply with the requirements set forth in 20 C.F.R. § 404.950(d) because it did not state "the important facts Dr. Colonno's testimony is expected to prove," or "why these facts could not be proven without issuing a subpoena," and instead contained "legal argument directed at the weight that should be given to Dr. Colonno's opinion regarding the claimant's functional capacity." (AR 40-41.)

Plaintiff argues there are no "procedural requirements" that must be met prior to the issuance of a subpoena. (Dkt. No. 11 at 3.) She contends that the ALJ's duty to develop the record compels the issuance of a subpoena without regard to any procedural requirements. *Id*. at 4. She further contends that Dr. Colonno's report is internally inconsistent, and that the regulations and due process require the opportunity to cross-exam a medical witness. *Id*. The Commissioner simply restates the ALJ's reasons for denying the motion for subpoena, and does not respond to the due process arguments raised by plaintiff. (Dkt. No. 14 at 5.)

Social Security regulations provide that: "When it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. §§ 404.950(d)(1), 416.950(d)(1). A party seeking to subpoena a witness must file a request at least five days before the hearing date. 20 C.F.R. §§ 404.950(d)(2), 416.950(d)(2). The request must: "give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents . . .; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." *Id.*

As stated by the Ninth Circuit, "[a] claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983)). The ALJ has discretion to decide when cross-examination is warranted. *Id.* The Ninth Circuit has also found that due process requires the enforcement of a subpoena "where [a] physician is a crucial witness whose findings substantially contradict the other medical testimony . . . ." *Solis*, 719 F.2d at 301.

The Court agrees that the ALJ erred in denying her request to subpoena Dr. Colonno to testify. Contrary to the ALJ's ruling, petitioner's motion for a subpoena complied with the regulations. Specifically, the motion explains that Dr. Colonno's report "does not take into account the limitations of pain in regard to [plaintiff's] ability to sit, stand or walk." (AR 86.) Although Dr. Colonno found plaintiff had severe fibromyalgia and did not question the validity

of plaintiff's pain complaints, he concluded that she had the capacity to stand or walk for two hours in an eight-hour work day, and sit for six hours in an eight-hour work day, without interruption. (AR 478, 481.) This conclusion is inconsistent with plaintiff's pain complaints and with the opinions of plaintiff's treating physicians. As plaintiff contends, "[i]t is therefore unclear if his conclusion that [plaintiff] could walk/stand for two hours and sit all day was referencing solely her mechanical structure without consideration of pain or if he was completely rejecting her pain complaints on some unidentified grounds." (Dkt. No. 11 at 4.) Because plaintiff sets forth facts showing that Dr. Colonno's testimony was reasonably necessary for a full and true disclosure of the facts, the ALJ erred in denying her request to subpoena Dr. Colonno to testify. *See Copeland*, 861 F.2d at 539.

Furthermore, Dr. Colonno's opinion constituted the primary basis for the ALJ's denial of benefits and substantially contradicted the opinions of plaintiff's treating physicians. Accordingly, the ALJ abused his discretion in denying plaintiff's request to cross-exam Dr. Colonno. *Solis*, 719 F.3d at 302 ("Because Solis availed himself of the right to request cross-examination, and because the report was so crucial to the ALJ's decision, we find that the denial of Solis' request was an abuse of discretion."). This matter should, therefore, be reversed and remanded to provide plaintiff an opportunity to cross-examine Dr. Colonno and to allow the ALJ to reconsider his decision based on the revised record.

B. <u>Step Two and Three Findings</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

activities" refers to "the abilities and aptitudes necessary to do most jobs," including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*.

Plaintiff argues that the ALJ erred by failing to find she had a severe mental impairment. The ALJ found the evidence did not establish a separate mental impairment, "but that she suffers from some mental deficits related to her physical condition." (AR 15.) The ALJ stated that although he did not find her mental impairments to be severe, he "incorporated limitations in the residual functional capacity finding . . . to account for the mental deficits related to her physical condition, in accordance with the Regulations." (AR 16.)

The Commissioner argues that any error in designating specific impairments severe was harmless because step two was resolved in her favor. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). In reply, plaintiff asserts that she was prejudiced at step three because the ALJ failed to consider whether her depression in conjunction with her fibromyalgia met or equaled listing 12.04 (affective disorders). (Dkt. No. 16 at 2.)

At step three of the sequential evaluation process, the Commissioner must determine whether the claimant's "severe" impairments, individually or in combination, meet or equal an Appendix 1 Medical Listing and are "presumptively" disabling. 20 C.F.R. § 404.1520(d).

Here, the ALJ found that plaintiff failed to meet or equal a listing because "none of the treating, reviewing, or examining medical providers concluded that [her] impairments met or equaled any of the listed impairments." (AR 16.) Although the ALJ did not discuss the combined impairments or compare them to any listing, plaintiff has offered no theory or pointed to any evidence that shows that her combined impairments equal a listed impairment. *See Lewis*, 236 F.3d at 514. Although the ALJ's statement was brief and involved no discussion, he did not err in the step three determination. Accordingly, the Court finds any error in designating specific impairments severe at step two was harmless.

### C. Medical Opinion Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they,

rather that the doctors', are correct." *Id.*

        1.  *Richard A. Neiman, M.D.*

Dr. Neiman has been plaintiff's treating rheumatologist since October 2006. (AR 400-27, 429-35, 470-74, 499-502.) As Dr. Neiman noted, plaintiff has had fibromyalgia since 1993, which worsened in 2006. (AR 415.) Dr. Neiman diagnosed plaintiff with fibromyalgia, noting 18 of 18 tender points with associated chronic pain, stiffness, fatigue, and cognitive difficulty. (AR 413, 415, 418, 420, 430, 435.) He referred her to physical therapy and prescribed Flexeril (cyclobenzaprine), Valium (diazepam), and Tylenol.

On August 30, 2007, Dr. Neiman stated:

> Julie Tarter has ongoing pain and fatigue. She last worked full time in June 2006. . . . She went back part time to three days, 3-1/2 hours a week. She then tried 5-1/2 hours a week, three days per week and by February 7, 2007, had to stop working because of pain and fatigue. . . .
> Examination today revealed mild tenderness to palpitation fairly diffuse. No joints were red, hot, or boggy. She is felt to have fibromyalgia – chronic pain.
> She continues on disability. It is unclear at what point she may go back to work.

(AR 408.)

The ALJ disregarded Dr. Neiman's opinion because it "lack[ed] any specific limitations that may be considered with regard to the claimant's physical capacity on a function-by-function basis, thus, is of little probative value." (AR 20.) The ALJ also found that "his associated notes indicated only mild tenderness to palpitation 'fairly diffuse,' and that, 'her joints were not red, hot, or boggy.' Thus, no specific limitations can be attributed to the accompanying notes." *Id.*

On March 31, 2010, Dr. Neiman completed a "Physical Residual Functional Capacity Assessment" form. (AR 471-74.) Dr. Neiman opined that plaintiff could lift and/or carry less

than ten pounds, stand and/or walk two hours in an eight-hour work day, and must periodically alternate between sitting and standing to relieve pain and discomfort. (AR 471-72.) Dr. Neiman explained that plaintiff "avoids most lifting. She can pick up a light grocery bag or gallon of milk but would be unable to do this 2/3 of her day. [She] is always alternating position to find the best position of comfort throughout the day and night." (AR 472.) He also indicated plaintiff could occasionally climb ramps or stairs, and stoop, but could never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl, noting that these activities increased her pain, stiffness, and muscle fatigue. *Id*. He also identified several manipulative limitations, noting plaintiff has grasping issues due to stiffness and muscle fatigue. (AR 473.)

The ALJ rejected Dr. Neiman's opinion because it lacked a basis in objective evidence and was based on plaintiff's subjective reports. (AR 20-21.) The Court agrees with plaintiff that the ALJ erred in rejecting the opinions of her treating rheumatologist Dr. Neiman.

Fibromyalgia is a disease that is notable for its lack of objective diagnostic techniques. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."). Put differently, "the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (internal quotation omitted). "The principle symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple

tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet*, 78 F.3d at 306.

Here, Dr. Neiman's medical records show that plaintiff has exhibited 18/18 tender points of fibromyalgia (AR 412, 413, 415, 418, 420, 502), pain (AR 400, 401, 402, 403, 404, 405, 406, 408, 410, 412, 413, 414, 415, 416, 417, 418, 430, 433, 434, 472-74, 500-02), fatigue (AR 408, 410, 434, 472-73, 502), stiffness (AR 405, 434, 472-73), and cognitive difficulty. (AR 402, 433, 434-35, 474, 501). Moreover, courts have found it error for an ALJ to discount a treating physician's opinion due to a lack of objective evidence for fibromyalgia. *See Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet*, 78 F.3d at 306). Here, the ALJ erred by "'effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.'" *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Green-Younger*, 335 F.3d at 108).

Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law. *Lester*, 81 F.3d at 834. However, courts retain flexibility in applying the credit as true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further determinations. *Id*. Because it is not clear that the ALJ would be required to find plaintiff disabled if the evidence were credited, this case should be remanded for further proceedings.

D. Credibility

A determination of whether to accept a claimant's subjective symptom testimony

requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Id*. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because it is unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id*.

In this case, there was no evidence that plaintiff was malingering. Consequently, the ALJ was required to provide clear and convincing reasons to reject her testimony. As stated by the ALJ,

> The [plaintiff] alleged that she was unable to work due to pain. She described "three types of pain," including burning, muscle and joint achiness, and muscle spasm. The [plaintiff] also alleged significant fatigue, as she did not sleep well. She alleged difficulty standing or sitting for prolonged periods, even if she took breaks to walk around. She spent most of her day laying down to relieve pain. The [plaintiff] estimated that he[r] pain had never dropped below a four or five on the pain scale since September 2009. However, her pain levels varied and was exacerbated by activity. She estimated she had difficulty getting out of bed 10 days per month, but these days are not predictable. The [plaintiff] opined that she was able to work until 2007 because her pain did not stay at high levels for longer

periods as it tended to during the relevant period. She also indicated there was significant flexibility involved.

(AR 17.) The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. (AR 18.) The ALJ offered two reasons to support this decision: (1) plaintiff's subjective complaints regarding her pain and dysfunction were not corroborated by the objective medical evidence; and (2) plaintiff's activities do not corroborate her subjective estimations of the limiting effects of her symptoms. (AR 18.) Plaintiff contends that these are not clear and convincing reasons for discrediting her testimony. (Dkt. No. 12 at 10-15.)

The Court agrees that the ALJ's first reason for rejecting her testimony was not clear and convincing because the ALJ applied an inappropriate legal standard. As stated above, once a claimant has produced medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of her pain solely because it is unsupported by objective medical evidence. *Bunnell*, 947 F.2d at 347-48; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings."). Because the ALJ concluded at step two that plaintiff's fibromyalgia and obesity constituted severe impairments, the ALJ could not thereafter discredit plaintiff's testimony regarding the severity of her pain or symptoms on the ground that her testimony was unsupported by objective medical evidence.

The ALJ's attempt to discount plaintiff's subjective complaints based upon a lack of

corroborating objective evidence was harmful error in light of the ALJ's acknowledgement that plaintiff suffers from fibromyalgia, a disease that is notable for its lack of objective diagnostic techniques. *Sarchet*, 261 F.3d at 306. Thus, the ALJ erred by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594. Moreover, by focusing on the objective medical evidence, the ALJ overlooked the copious amount of medical treatment records showing the nature and extent of plaintiff's fibromyalgia treatment.

The ALJ's other reason for rejecting plaintiff's allegations of pain and dysfunction was that he found them to be inconsistent with her daily activities. (AR 19.) The ALJ noted that plaintiff performed her own self care, did light housework and laundry, and went grocery shopping. (AR 19.) The ALJ also noted plaintiff participated in weight watchers, did light exercise, and took a trip to Canada and Bellingham to visit family. *Id*. However, "the mere fact that a plaintiff had carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Furthermore, as plaintiff points out, the evidence relied upon by the ALJ actually supports plaintiff's statements to the contrary. For example, plaintiff testified that she did light housework, but only "[o]n better days and if [her] pain level was at a four . . . but I don't do them all at one time, I space them out, I do small little amounts." (AR 527.) As for exercise, plaintiff testified that she does five to ten minutes of light stretches if she is able as instructed by her physical therapist. (AR 515.) She further explained that she had tried to walk but her pain

increased, and she only recently started to try to walk for five minutes as instructed by her physical therapist. (AR 522.) Although she had enrolled in Weight Watchers and had a pedometer to track her progress, her attempts to lose weight and exercise more have been hampered by her pain levels. (AR 431.) She also testified that she only leaves the house on some days to go to doctor's appointments, physical therapy, or her mother's house. (AR 517.)

Activities have a bearing on a claimant's credibility if the level of activity is inconsistent with the claimant's alleged limitations. *See Reddick*, 157 F.3d at 722. The ALJ's conclusion that plaintiff's activities were inconsistent with her allegations of debilitating pain is not supported by substantial evidence in the record.

Finally, the ALJ offered another reason for rejecting plaintiff's testimony. Based upon his personal observations at the hearing, the ALJ discounted plaintiff's testimony because she did not "appear to be in pain or discomfort and did not request to move around during this hour-long hearing." (AR 19 n.1.) As noted by the Ninth Circuit, "sit and squirm" jurisprudence "has been condemned." *See, e.g., Perminter v. Heckler*, 765 F.3d 870, 872 (9th Cir. 1985) (holding that the denial of benefits cannot be based on the ALJ's personal observation of the claimant at the hearing when the claimant's statements to the contrary are supported by substantial evidence). The Court does not find this basis for the ALJ's credibility finding supported by substantial evidence.

Accordingly, the Court finds that the reasons proffered by the ALJ are not "clear and convincing" reasons for discrediting plaintiff's testimony concerning the severity and limitations resulting from her symptoms of pain. On remand, the ALJ is directed to conduct further findings evaluating the credibility of plaintiff's subjective complaints, and reassess

plaintiff's credibility in light of the direction provided by this opinion.

E. Lay Witness Testimony

Plaintiff argues that the ALJ failed to give germane reasons to discredit the lay witness testimony of her significant other, Matt Borselli, and her mother, Eva Tarter. (Dkt. 11 at 19-21.) Plaintiff contends that such error requires reversal. The Commissioner states only that "their testimony does not compel a finding of greater limitation than that assigned by the ALJ." (Dkt. No. 14 at 8-9.)

1. *Matt Borselli*

During the administrative hearing, Mr. Borselli testified regarding plaintiff's physical and cognitive impairments. (AR 531-40.) In his decision, the ALJ summarized Mr. Borselli's testimony in two lengthy paragraphs. (AR 18.) However, the ALJ failed to either fully credit his testimony or provide germane reasons for disregarding it.

Lay witness testimony as to a plaintiff's symptoms or how an impairment affects one's ability to work is competent evidence that cannot be disregarded without comment. 20 C.F.R. §§ 404.1513(d) (4), 416.913(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). To discount lay witness testimony, the ALJ must "provide reasons germane to each witness." *Id*.

The ALJ failed to meet this standard with respect to Ms. Borselli's testimony. "[T]he ALJ may not disregard lay witness testimony about the claimant's limitations if the ALJ has not validly rejected those limitations and their existence would alter the ultimate nondisability determination." *Molina v. Astrue*, __ F.3d __, 2012 WL 1071637 (9th Cir. 2012) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). Because Mr. Borselli's testimony adds substantial weight to plaintiff's claim of disability, and because the ALJ failed

to provide legally sufficient reasons for rejecting plaintiff's testimony, the Court cannot say with respect to Mr. Borselli's testimony "no reasonable ALJ, when fully crediting the testimony could have reached a different disability determination." *Robbins*, 466 F.3d at 885 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2000) (holding that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony could have reached a different disability determination.")). On remand, the ALJ should reevaluate the weight to be given this testimony.

### 2. *Eva Tarter*

The ALJ also rejected a declaration prepared by plaintiff's mother, Ms. Tarter. (AR 19, 186-88.) As summarized by the ALJ, Ms. Tarter's declaration "indicated that she had observed the [plaintiff] 'constantly fidgeting,' experiencing difficulty standing up and sitting down, and engaging in 'obvious muscle guarding' behavior." (AR 19, 187.) "She also opined that the [plaintiff] experienced difficulty moving around was exhausted all the time, and had cognitive problems. In particular, she identified problems concentrating, remembering certain things, and was easily distracted." *Id.*

The ALJ rejected Ms. Tarter's statements because they were not "supported by objective medical findings." (AR 19.) This was not a germane reason for rejecting Ms. Tarter's declaration. For the reasons discussed above, the ALJ erred by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594. On remand, the ALJ is directed to reconsider Ms. Tarter's lay witness testimony.

REPORT AND RECOMMENDATION
PAGE -17

F.  Vocational Expert

Finally, plaintiff argues that the ALJ erred in finding she was able to perform the jobs of telephone solicitor, diet clerk, and call out operator, because the hypothetical he posed to the vocational expert ("VE") did not include all of her limitations. Specifically, she contends that the ALJ erred in discounting the cognitive limitations assessed by examining psychologist Rodger Meinz, Ph.D., regarding her ability to tolerate the stress, pace, and quality requirements of employment. (Dkt. No. 11 at 21 (citing AR 465).)

A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.") (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1278, 1279 (9th Cir. 1987)).

The ALJ discounted the opinion of Dr. Meinz because he indicated that his assessment was "totally based on [plaintiff's] self report," which the ALJ discounted as not credible. (AR 21 (citing 468).) Although an ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), that is not the case here. To the contrary, the ALJ erred by finding plaintiff not fully credible. This was thus not a legitimate

reason to give less weight to Dr. Meinz opinion. The ALJ's error in evaluating the opinion of Dr. Meinz was not harmless as it affected the propriety of the ALJ's assessment of the RFC and the hypothetical questions that were posed to the VE. On remand, the ALJ must reevaluate the opinion of Dr. Meinz.

Because the Court recommends remand for further consideration of the medical evidence and plaintiff's credibility, the ALJ will necessarily have to reassess plaintiff's RFC and conduct a new step five analysis that incorporates any changes in plaintiff's RFC. If the ALJ's RFC assessment is revised, the ALJ will also call a VE to testify about jobs that may exist with a properly framed hypothetical that incorporates all of plaintiff's limitations.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings not inconsistent with this Report and Recommendation.

DATED this 17th day of April, 2012.

Mary Alice Theiler
United States Magistrate Judge